IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 13-05388 (ESL)

JOSE R. ORTIZ-FELICIANO               CHAPTER 13

    Debtors

## OPINION AND ORDER

This case is before the court upon the *Objection to Proposed Plan Confirmation under Section 1325* filed by the Chapter 13 Trustee (the "Chapter 13 Trustee" or "Trustee) alleging that the "Debtor has failed to include [his] wife's income and expenses in Schedules I and J of the bankruptcy petition as well as the Chapter 13 Statement of Monthly Income and Calculation of Commitment Period and Projected Disposable Income ('Means Test')" (the "*Objection*", Docket No. 112). The Chapter 13 Trustee acknowledges that the "Debtor has a prenuptial agreement" but argues that in spite of it, "he and his wife form a single economic unit, and her income should be considered in this bankruptcy". Id. The Debtor counters arguing that by virtue of the prenuptial agreement[1] between him and his wife with "complete separation of property", his non-filing spouse is "financially independent of him" and "does not contribute to [his] household expenses, as statutorily defined and interpreted by case law, because [he] lives in her home and the non- filing spouse would have to incur in household expenses to support herself irregardless of whether she was married to [him] or not" (Docket No. 76, p. 3, ¶ 9, and p. 9, ¶ 22).

### Factual and Procedural Background

On July 27, 2012, the Debtor filed a Chapter 13 bankruptcy petition in Case No. 12-05727 (ESL) (the "First Petition"). On August 15, 2012, the Debtor filed the corresponding schedules describing his income, expenses, properties and debts (Case No. 12-05727 Docket

---

[1] The Spanish version of the prenuptial agreement was filed at Docket No. 74. Although the court will consider this document for the purposes of this *Opinion and Order*, should any party take an appeal, the certified English translation must be provided.

-1-

No. 12). His wife's income was not disclosed in *Schedule I* and, instead, it includes the following statement:

> Due to Debtor's economic situation and the filing of this bankruptyc [*sic*] petition, Debtor's wife is covering most living expenses. In no way is intended to impeach, modify and/or supersede the contractual rights and obligations created by the prenuptial agreement.

Case No. 12-05727 Docket No. 12, p. 28, ¶ 17.

Also on August 15, 2012, the Debtor filed his proposed Chapter 13 Plan for that First Petition. See Case No. 12-05727 Docket No. 13. The Chapter 13 Trustee assigned to that case, Mr. Alejandro Oliveras, objected to the confirmation of his proposed plan sustain that by not informing his wife's income and expenses, the Debtor was acting in bad faith and was not submitting all his disposable income to fund the plan. See Case No. 12-05727 Docket No. 33.

On January 24, 2013, Debtor's First Petition was dismissed for failure to timely respond to such objection by the Chapter 13 Trustee, as ordered by the court on December 12, 2012. See Case No. 12-05727 Docket No. 37.

About 6 months later, that is, on June 28, 2013, the Debtor filed a second Chapter 13 bankruptcy petition (Docket No. 1). On that same date, the Debtor filed the corresponding schedules describing his income, expenses, properties and debts (Docket No. 4). *Schedule I* of the bankruptcy petition reveals that Debtor is married and employed as a doctor in medicine at Dinámica Quirúrgica del Este, C.S.P., receiving income for professional services in the amount of $4,200.00 per month (Docket No. 4, p. 10, Part B). His wife's income is not disclosed in *Schedule I* and, instead, the same includes the following statement:

> Due to Debtor's economic situation and the filing of this bankruptyc [*sic*] petition, Debtor's wife is covering most living expenses. By providing information for spouse's income and disclosing a family budget, in no way is intended to impeach, modify and/or supersede the contractual rights and obligations created by the prenuptial agreement. Spouse's information is provided for disclosure and bankruptcy law compliance purposes only.

Docket No. 4, p. 27, ¶ 17.

...

*Schedule J* shows that Debtor has monthly expenses in the total amount of $3,200.00. These expenses include: (1) $100.00 for telephone; (2) $150.00 for food; (3) $45.00 for laundry and dry cleaning; (4) $86.00 for medical expenses; (5) $40.00 for recreation; (6) $2,300.00 for Domestic Support Obligation ("DSO"); (6) $408.32 for regular business expenses; and (7) $70.68 for miscellaneous and unexpected expenses. See Docket No. 4, p. 28.

In his *Statement of Financial Affairs*, the Debtor discloses that he is currently married to Mrs. Ingrid Lithgow Ramirez under a prenuptial agreement. See Docket No. 4, p. 31, ¶ 16.

The Chapter 13 *Statement of Monthly Income and Calculation of Commitment Period and Projected Disposable Income* ("*Means Test*") discloses a monthly gross income $2,660.25 for a household of two people. This income belongs solely to the Debtor, as his wife's income was not disclosed in the *Means Test*. See Docket No. 4. He indicated that his "household size" was "2" (Docket No. 4, p. 2, ¶ 16).

The Chapter 13 Plan dated June 28, 2013 filed by the Debtor proposes a payment schedule of 60 monthly payments of $1,000.00 for a plan base of $60,000.00. See Docket No. 3. The Plan also provided for the payment in full of priority claims by ASUME and the Internal Revenue Services ("IRS") and attorneys' fees in the amount of $2,981.00. Id. The general unsecured claims would be paid pro-rata.

The creditors' meeting was scheduled for August 14, 2013 (Docket No. 8). The Trustee, however, continued such meeting to October 8, 2013 to analyze and compare information and documents of the present case with the information provided in Debtor's previous bankruptcy case no. 12-05727. See Docket No. 17.

On October 8, 2013, the creditors' meeting was held, where the Debtor revealed that he is employed by his wife's corporation and paid in cash. See Docket No. 19, p. 3, ¶ 5. The Chapter 13 Trustee objected to the confirmation of the plan because, *inter alia*, the Debtor had not submitted evidence of the income that he declared was receiving or evidence of the expenses actually paid by his wife's corporation. Id. The Chapter 13 Trustee also indicated that

-3-

he would review the case to determine if he would file an objection to plan confirmation in light of the fact that Debtor had not included his wife's income in *Schedule I* and the *Means Test*.

On November 13, 2013, the Chapter 13 Trustee filed an *Unfavorable Report of Proposed Plan Confirmation under § 1325* (Docket No. 22) contending that the Plan was not proposed in good faith, since he had failed to list his wife's income in *Schedule I* and the *Means Test*.

A confirmation hearing was held on November 20, 2013 (Docket No. 27). The parties were granted 90 days to move the court on the status of pending issues.

On December 5, 2013, the Debtor filed an *Amended Chapter 13 Plan* to "increase the base of the plan and provision for IRS secured claim" (Docket No. 29, p. 1, ¶ 1). The Plan dated December 5, 2013 proposes a payment schedule of 12 payments for $1,000.00 and 48 payments for $1,400.00, for a plan base of $79,200.00. Id. The same provides for the payment in full of secured and priority claims filed by the IRS, payment in full of priority claim filed by ASUME, and attorneys' fees in the amount of $2,981.00. Id. Any remaining amount will be distributed prorate for the payment of general unsecured claims. Id. General unsecured creditors would be paid, approximately, 14.2% of their claims.

On December 16, 2013, the Chapter 13 Trustee filed an *Unfavorable Report of Proposed Plan Confirmation under § 1325* reiterating that the Plan dated December 5, 2013 was not proposed in good faith because the Debtor failed to include his wife's income and expenses in *Schedules I and J* and the *Means Test*, even though they formed a single economic unit (Docket No. 31). The Chapter 13 Trustee further indicated that the Debtor's *Means Test* states that he has a household of two, even though his wife's income was not included in such document. Id.

On January 10, 2014, the Debtor filed a *Response to [the Chapter 13] Trustee's Recommendation and Request for Entry of Order* (Docket 32) alleging that he and his wife are married under a prenuptial agreement, and that his wife has refused to provide information regarding her income and expenses. The Debtor argued that *Schedules I and J* were prepared

taking into account only his income and expenses and, therefore, it is not necessary to take his wife's income and expenses into account, as they are "not property of the estate, she is not under the jurisdiction of this court, she is not required by law to provide them, and would [sic] it is only a capricious request by the Trustee, as Debtors [sic] is already proposing to pay all disposable income and projected disposable income into the plan" (Docket No. 32, p. 2, ¶ 6).

After obtaining an extension of time[2], on March 10, 2014, the Chapter 13 Trustee filed a *Reply to Motion Requesting Entry of Order, Objection to Plan Confirmation and Memorandum of Law in Support Thereof* arguing that courts have determined that "a non-filing spouse's income and expenses must be considered when determining a debtor's disposable income, since the debtor and his or her spouse form a single economic unit" (Docket No. 39, p. 7). He also sustains that "Debtor's allegation that his wife pays most if not all of the household expenses and the fact that he is employed by his wife's corporation, which is his only source of income, further supports the argument that Debtor and his wife are not separate operating economic units. In light of this, Debtor's wife's income and expenses must be considered in order to determine whether Debtor is submitting all his disposable income to fund the plan." Id., p. 11. In regards to the lack of good faith, the Trustee claims that "[s]ince [the] Debtor has not informed how his wife's income is used, the Trustee cannot determine whether Debtor has been enjoying a lavish lifestyle while providing a 14.20% dividend to his general unsecured creditors." Id. Hence, the Chapter 13 Trustee contends that the Plan dated December 5, 2013 cannot be confirmed, that the court should conclude that the Debtor's wife's income and expenses must be considered to determine the Debtor's disposable income and good faith in proposing the plan; and requests an order for Debtor to list his wife's income and expenses in *Schedules I and J* and *Means Test*.

On May 5, 2014, the Debtor filed an *Amended Means Test* to "adjust household size" (Docket No. 51, p. 1, ¶ 1) to "1" (Docket No. 51, p. 3, ¶ 16).

---

[2] See Docket Nos. 34 and 35.

After obtaining the court's leave[3] and three extensions of time[4], on August 21, 2014, the Debtor filed a *Response to Trustee's Reply* alleging that: (a) he "has amended the *Means Test* to reduce the household size to one and thus moot the Trustee's mistaken assumption that Debtor and his non-filing spouse pool income and expenses and form a single economic unit" (Docket No. 76, p. 3, ¶ 9); (b) his "non-filing spouse is financially independent of him" (Id.); (c) his proposed Chapter 13 Plan pays for debts that were incurred by him solely; (d) because of the prenuptial agreement, the "household expenses do not belong to the Debtor, but to his wife as they are household expenses that would be incurred by the non-filing spouse notwithstanding whether she was married to the Debtor or not" (Id., pp. 5-6, ¶ 13); and (e) "[w]ere Debtor to include his non-filing spouse's income as any 'amount paid by any entity other than the debtor....on a regular basis for the household expenses of the debtor' an anomalous situation would arise, where the non-filing spouse, who has not filed for bankruptcy, would be compelled to pay for debts incurred personally, not jointly, by Debtor" (Id., p. 6, ¶ 15).

On March 13, 2015, the Debtor filed *Amended Schedules I and J* to "actualize budget" (Docket No. 110). His wife's income and expenses were not disclosed.

Also on March 13, 2015, the Debtor filed an *Amended Chapter 13 Plan* to "increase base of the plan" (Docket No. 111).

On March 24, 2015, the Chapter 13 Trustee filed an *Objection to Proposed Plan Confirmation under Section 1325* (Docket No. 112) restating the prior arguments for the objection.

## Jurisdiction

The court has jurisdiction to determine the instant contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## Applicable Law and Analysis

Confirmation of a Chapter 13 plan is governed by Section 1325 of the Bankruptcy Code. Section 1325(b)(1) reads as follows:

---

[3] See Docket Nos. 41 and 43.
[4] See Docket Nos. 49, 54, 60, 61, 72 and 73.

(b)(1)  If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan---

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b).

The "means test" is the "complex computation of a Chapter 7 debtor's income and expenses to determine if there is a presumption of abuse under 11 U.S.C. § 707(b) requiring the dismissal of the case due to a debtor's ability to repay a schedule amount or percentage of debt to creditors".  William L. Norton, Jr. and William L. Norton III, Norton Dictionary of Bankruptcy Terms (Thomson Reuters, 2012).  The means test also affects the requirements for Chapter 13 plan confirmation under Section 1325(b)(3) of the Bankruptcy Code.  Id.  "The formula for above-median-income debtors is known as the 'means test' and is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file."  Hamilton v. Lanning, 560 U.S. 505, 510 fn. 2 (2010), citing Fed. R. Bankr. P. Off. Form 22C (2010).  Also see In re Liverman, 383 B.R. 604, 606 n. 1, 608-609 (Bankr. D.N.J. 2008).  "The purpose of the calculation is to determine whether there is presumption of abuse warranting dismissal of the case, and that the application … involves a snapshot of the debtor's financial condition as of the date of the petition."  In re Burbank, 401 B.R. 67, 72 (Bankr. D.R.I. 2009), citing In re Rudler, 388 B.R. 433, 438-439 (B.A.P. 1st Cir. 2008).  For purposes of the means test, the debtor's statement of current monthly income or "SCMI" is "the average monthly income from all sources that the debtor and spouse receive without regard to whether such income is taxable income, derived during the 6-month period ending on … the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current

income required by Section 521(a)(1)(B)(ii)." In re Walker, 2006 Bankr. LEXIS 845 at **4-5, 2006 WL 1314125 at *2 (Bankr. N.D. Ga. 2006), citing 11 U.S.C. § 101(10A)(A). Section 707(b) of the Bankruptcy Code permits the debtor to subtract from SCMI certain expenses, which are generally established by the IRS National Standards and Local Standards for the area in which the debtor resides. In some instances, the debtor is permitted to deduct actual expenses. See 11 U.S.C. § 707(b)(2)(A)(ii). "Amounts reasonably necessary to be expended ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income... greater than the highest median family income of the applicable State." 11 U.S.C. § 1325(b)(3). "For above median income debtors, the means test in Section 707(b)(2) is employed to determine the amounts 'reasonably necessary' debtors may deduct in calculating disposable income." In re O'Neill Miranda, 449 B.R. 182, 191 (Bankr. D.P.R. 2011). Debtors are to use the expenses in effect as of the petition date. See 11 U.S.C. § 707(b)(2)(A)(ii)(I). Additionally, debtors are permitted to deduct average monthly payments for secured and priority debts. See 11 U.S.C. § 707(b)(2)(A)(iii). The SCMI is designed to reflect a debtor's disposable income, while Schedules I and J are used to calculate a debtor's "projected disposable income".

Under Section 1325(b)(1)(B) of the Bankruptcy Code, if the trustee or an unsecured creditor objects to confirmation of the plan, the court may not confirm the plan unless the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under plan will be applied to make payments to unsecured creditors under the plan." In re O'Neill Miranda, 449 B.R. at 189-190, citing 11 U.S.C. § 1325(b)(1). "The Bankruptcy Code does not define projected disposable income." In re O'Neill Miranda, 449 B.R. at 190. In Hamilton v. Lanning, the U.S. Supreme Court that "projecting" disposable income is a "forward-looking" concept, and that a court may take into account changes in a debtor's income or expenses from those used in the means test, provided that the changes are known or virtually certain to occur. 560 U.S. at 519. Thus, in determining the projected monthly disposable income, the court

"should begin by calculating disposable income" under the statutory formula (income received six months prior to filing) and, for above-median-income debtors, the allowable expenses under the Internal Revenue Service ("IRS") standards. Id. Only "in unusual cases … a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." Id. Hence, "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation". Id. at 524.

The Chapter 13 Trustee contends that a non-filing spouse's income and expenses must be considered to determine a debtor's disposable income, since a debtor and his/her spouse constitute a "single economic unit". Chapter 13 Trustee's *Objection*, Docket No. 39, p. 7. The theory, as proposed by the Chapter 13 Trustee, is that the non-filing spouse's income is available to defray the Debtor's reasonably necessary expenses, thus freeing a larger portion of the Debtor's separate income for satisfaction of unsecured claims and that it would be unfair to allow the Debtor's separate income to be used for the family necessities and not count a non-filing spouse's income which would remain "disposable" to the Debtor and uncommitted to the plan. See id., p. 8, citing In re Soper, 152 B.R. 985, 988 (Bankr. D. Kan. 1993).

To counter that, the Debtor initially amended his *Means Test* to "adjust household size" to only "1" (Docket No. 51, p. 3, ¶ 16). Thereafter, he contends that he "has amended the *Means Test* to reduce the household size to one and thus moot[s] the Trustee's mistaken assumption that Debtor and his non-filing spouse pool income and expenses and form a single economic unit" (Docket No. 76., p. 3, ¶ 9). He concludes that because his "household size is one (1) person, [and in consideration of the prenuptial agreement] the only income to be considered in Form 22C is the income earned by [him]". Id., p. 8, ¶ 19.

The Chapter 13 Trustee reiterates that in the instant case, the Debtor and his non-filing spouse are not separate operating economic units upon the Debtor's own admission that his "wife is covering most [of his] living expenses" (Docket No. 4, p. 27, ¶ 17). See Docket No. 39, p. 11.

In <u>Lorenz v. Am. Educ. Services/Pennsylvania Higher Educ. Assistance Agency (In re Lorenz)</u>, 337 B.R. 423 (B.A.P. 1st Cir. 2006), the debtor contended that if he were required to repay his student loan, his monthly expenses would exceed his anticipated income and thus repayment of the loan would create an undue hardship warranting discharge of the debt. The creditor argued that in finding undue hardship, no consideration was given to the income and expenses of the debtor's household, which included the debtor's domestic partner. The debtor and his domestic partner conceded that they conducted their financial affairs as a "single financial unit" and that the partner assumed the role of a spouse who substantially subsidized the debtor's lifestyle. <u>Id.</u> at 427. The Bankruptcy Appellate Panel for the First Circuit ("BAP") held that in the context of the debtor's household, the debtor failed to show a financial inability to repay the student loan and that the partner's income had a substantial effect on the debtor's actual or necessary expenses and should have been taken into account in the undue hardship determination. In reaching such conclusion, the BAP considered the following rationale in <u>Greco v. Sallie Mae Serv. Corp. (In re Greco)</u>, 251 B.R. 670, 679 (Bankr. E.D. Pa. 2000):

> In a variety of contexts, bankruptcy courts take into account the income of a debtor's non-filing spouse or co-habitant because it is necessary to evaluate a debtor's ability to repay her financial obligations, *e.g.*, in ascertaining a debtor; is disposable income for purposes of 11 U.S.C. § 1325(b)(1)(B), see <u>In re Rothman</u>, 204 B.R. 143, 159-60 (Bankr. E.D. Pa. 1996), and cases cited therein; and in making the determinations of a debtor's ability to pay a divorce property settlement obligation under 11 U.S.C. § 523 (a)(15), see <u>In re Koons</u>, 206 B.R. 768, 773 (Bankr. E.D. Pa. 1997), and cases cited therein; and <u>In re Halper</u>, 213 B.R. 279, 284 (Bankr. D. N.J. 1997).

The BAP clarified that "[a]lthough [the non-filing spouse] has no legal obligation to repay the debtor's [] loans, he substantially subsidize[d the debtor]'s lifestyle. His income has a substantial effect on the debtor's actual or necessary expenses, and should have been taken into account in the undue hardship determination". <u>In re Lorenz</u>, 337 B.R. at 433. In reaching such conclusion, the BAP contemplated "that a broad spectrum of relationships may place non-spouses under the same roof as a [] debtor - from visitor to roommate to domestic/life partner. Not all such relationships trigger the necessity of folding the household-mate's finances into the [] equation. **Such arrangements must be evaluated case-by-case**." <u>Id.</u> at 433, fn. 15

-10-

(emphasis added). In that particular case, the BAP concluded that "there can be no doubt that [the debtor] and [his non-filing spouse] have so entwined their affairs as to require that [the spouse's] resources be considered if anything approaching a fair picture of [the debtor's] circumstances is to be had." Id.

"Courts [] reason that it is unfair to allow debtors to allocate separate income to family necessities if the non-filing spouse's income would remain 'disposable' to the debtor yet uncommitted to the plan." Mechele Dickerson, To Love, Honor, And (Oh!) Pay: Should Spouses Be Forced To Pay Each Other's Debts?, 78 B.U.L. Rev. 961, 1005 (October, 1998).

For instance, in In re Lorenz, 337 B.R. at 432, the BAP cited In re Rothman, 204 B.R. at 159-1060, which ruled as follows:

> We agree with the courts which have held that a non-debtor's spouse's income and expenses must be taken into account when determining whether a debtor's disposable income meets the requirements of § 1325(b)(1)(B). See In re Carter, 205 Bankr. 733 (Bankr. E.D. Pa. 1996) (SIGMUND, J.); In re Pickering, 195 Bankr. 759, 767 (Bankr. D. Mont. 1996); Cardillo, *supra*, 170 Bankr. at 492; Schnabel, *supra*, 153 Bankr. at 818; In re Belt, 106 Bankr. 553, 561-63 (Bankr. N.D. Ind. 1989); In re Carbajal, 73 Bankr. 446, 447 (Bankr. S.D. Fla. 1987); In re Saunders, 60 Bankr. 187, 188 (Bankr. N.D. Ohio 1986); In re Kern, 40 Bankr. 26, 28-29 (Bankr. S.D.N.Y. 1984); In re Sellers, 33 Bankr. 854, 857 (Bankr. D. Colo. 1983); In re Kull, 12 Bankr. 654, 659 (Bankr. S.D. Ga. 1981), aff'd sub nom. In re Kitchens, 702 F.2d 885 (11th Cir. 1983).

In In re McNichols, 249 B.R. 160, 170, 176 (Bankr. N.D. Ill 2000), the court reasoned that:

> The family is a functioning unit, of which the Debtor is an integral and important member, and the totality of the family's income and expenses is appropriately considered in calculating both the disposable income of the Debtor for purposes of §1325(b)(2) as well as the good faith requirement of §1325(a)(3). The Court rejects the Debtor's argument that she [nonfiling spouse] is a separately operating economic unit.
>
> …
>
> It is not appropriate for the Debtor to 'cherry pick' the family expense budget and have luxury items paid for through allocation to the non-debtor spouse so that the net effect is to maintain a luxurious lifestyle, but only pay a small dividend to unsecured creditors, pro rata from the $9,000.00 of the total Plan payments allocated under Paragraph 2(c)(ii).

-11-

In <u>In re Carter</u>, 205 B.R. 733, 736 (Bankr. E.D. Penn. 1996), the court expressed that:

> Most courts include the debtor's spouse's income in the budget for purposes of calculating projected disposable income under §1325(b) notwithstanding that the spouse is not a debtor in the Chapter 13 case. The theory is that the nonfiling spouse's income is available to defray the debtor's reasonably necessary expenses, thus freeing a larger portion of the debtor's separate income for satisfaction of unsecured claims. Creditors have argued that it would be unfair to allow the debtor's separate income to be used for the family necessities and not count a non-filing spouse's income which would remain 'disposable' to the debtor and uncommitted to the plan.
>
> …
>
> This view recognizes the reality that married couples live as a unit, pooling their income and expenses. This reality is also reflected in the Official Bankruptcy Forms which require a married debtor in Chapter 13 to report the income and expenses of herself and her spouse.

The <u>Carter</u> court refused to confirm the Chapter 13 debtor's plan because "[w]ithout income and expense information from the Debtor's [non-filing] husband we are unable to make a determination of the Debtor's disposable income." 205 B.R. at 736.

In <u>In re Waechter</u>, 439 B.R. 253, 256 (Bankr. D. Mass 2010), the court considered as follows:

> Where questions of good faith arise with respect to a non-filing spouse's contribution, or lack thereof, to a debtor's disposable income in Chapter 13 cases, some courts have investigated the lifestyle choices of the non-filing spouse. Thus, for example, if the debtor received income towards household expenses from her nonfiling spouse while at the same time enjoying the benefits of excessive luxury household expenses paid for exclusively by the spouse, courts have denied plan confirmation on the basis of bad faith.

In <u>In re Nahat</u>, 278 B.R. 108, 117 (Bankr. N.D. Tex. 2002), the court determined that a debtor had acted in good faith because his non-filing spouse's income was used to fund the plan:

> In this case, Mrs. Nahat's income is dedicated to paying creditors. To the extent there is a surplus after payment of obligations incurred by her, it is devoted to necessities and satisfaction of the terms of the Plan. Were the surplus being used to underwrite luxuries to be enjoyed by the Debtor and Mrs. Nahat, while the Debtor used chapter 13 for lien stripping, extensions of indebtness and discharge of unsecured claims, there might exist grounds for dismissal of the case or denial of confirmation on the basis that the chapter 13 filing was in bad faith.

In re Welch, 347 B.R. 247, 253-255 (Bankr. W.D. Mich. 2006), adopted a different approach:

> Courts recognize that there is no authority under Section 1325(b) itself to simply add the non-filing spouse's income to the debtor's own income for purposes of calculating the debtor's disposable income. In re Belt, 106 B.R. 553, 561 (Bankr. N.D. Ind. 1989). See also In re Williamson, 296 B.R. 760, 764 (Bankr. N.D. Ind. 2003). However, courts have nonetheless justified including the non-filing spouse's income in the Section 1325(b) equation on the theory that the non-filing spouse's income does have an effect upon what the debtor must expend from his or her own income for maintenance and support. **In other words, the courts have reasoned that a married debtor should have more of his or her own income available to fund a Chapter 13 plan if that debtor's non-filing spouse is also earning a living.**
>
> The courts have applied this rationale in one of two ways. Some courts have determined that all debtors and their non-filing spouses should be treated as quasi-partnerships whose incomes and expenses are pooled for purposes of assessing whether disposable income is available under Section 1325(b). See *e.g.*, In re Williamson, 296 B.R. at 764-65; In re Bottelberghe, 253 B.R. 256, 262-263. (Bankr. D. Minn. 2000). However, other courts have limited the pooling concept to an assumption that married couples share only "joint" living expenses and that each pays half of whatever those expenses might be to the extent his or her net income permits. See *e.g.*, In re Falke, 284 B.R. 133, 138-139 (Bankr. D. Or. 2002). For example, a debtor and her non-filing spouse may have joint housing and food expenses of $ 2,000 per month. The Falke approach would eliminate $1,000 of these expenses from the debtor's budget if the non-filing spouse had sufficient income to cover his or her half of these joint expenses.
>
> I question the soundness of each approach. Treating a couple as a marital unit with pooled income and shared expenses seems anachronistic. Many couples today undoubtedly continue the tradition of both conjugal and financial partnership. **However, times have changed. Dual incomes, second marriages, prenuptial agreements, and non-traditional living arrangements have all contributed to marital relationships where both spouses have reserved some degree of financial independence**. Modern couples may agree to cover common expenses or even contribute to a household account. However, it is not unusual now for each spouse to also keep a separate account for his or her personal pursuits. **Therefore, one can no longer simply accept as fact that a married couple will pool all income and expenses like a quasi-partnership or that a married couple will even share all household expenses, whatever that means, equally**. At best, a court today can only presume that a married couple pools income and/or shares expenses. **Each debtor must be given the opportunity to establish that his or her household is managed differently.**
>
> …

> [C]reditor's protestations about "fairness" are much less compelling when it comes to the question of what the bankrupt spouse should actually have to repay his or her creditors. After all, it is the debtor's creditors, not the non-filing spouse's creditors, who are being addressed through the debtor's Chapter 13 plan. Some of the bankruptcy spouse's creditors may have a legitimate claim to the non-filing spouse's income and assets because they had the foresight to include him as a co-signor or guarantor. However, what claim do the bankrupt spouse's other creditors have to the non-filing spouse's income? Creditors who did not procure the non-filing spouses signature certainly could not make such a demand outside the context of a bankruptcy proceeding. Indeed, it would appear that the non-filing spouse and that spouse's creditors are the ones who should be complaining about fairness.

In re Welch, 347 B.R. at 253-255 (emphasis added, footnotes omitted).

This court finds that the rationale in Welch resembles the BAP's reasoning in In re Lorenz, 337 B.R. at 433, fn. 15, which this court will follow. Although the Debtor in the instant case acknowledges that "his wife is covering most [of his] living expenses" (Docket No. 4, p. 27, ¶ 17), no evidence to that effect has been submitted or proffered. Absent of such evidence, this court cannot ascertain what "most living expenses" actually constitute. Moreover, the court cannot "accept as fact that a married couple will pool all income and expenses like a quasi-partnership or that a married couple will even share all household expenses, whatever that means, equally", In re Welch, 347 B.R. at 254, and/or conclude *ipso facto* that the Debtor and his non-filing spouse operate as a "single economic unit" without further ado. Therefore, the court will schedule an evidentiary hearing to determine if in fact the Debtor and his non-filing spouse operate or not as a "single economic unit". If they do, then the non-filing spouse's income and expenses must be considered in the Debtor's *Means Test*.

## Conclusion

In view of the foregoing, the court will schedule an evidentiary hearing to consider the Chapter 13 Trustee's *Objection* (Docket Nos. 39 and 112).

SO ORDERED.

In San Juan, Puerto Rico, this 15th day of June, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge

-14-